IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| James C. Snow (N-50072), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-4015 |
| | ) | |
| | ) | |
| Ghaliah Obaisi, as | ) | |
| independent executor of the | ) | |
| estate of Saleh Obaisi, | ) | |
| Wexford Health Sources, Inc., | ) | |
| and Randy Pfister, | ) | |
| | ) | |
| Defendants. | ) | |

## **Order**

Plaintiff James Snow, an inmate at Stateville Correctional Center in Joliet, Illinois, brings this action under 42 U.S.C. § 1983 and Illinois state law alleging that defendants Wexford Health Sources, Inc. ("Wexford"), former Wexford employee and Stateville medical director Dr. Saleh Obaisi (represented here by defendant Ghaliah Obaisi ("Obaisi"), the executor of Dr. Obaisi's estate), and Stateville warden Randy Pfister have failed to provide adequate medical care for several health conditions ailing him. Before me are Wexford's and Obaisi's motions to dismiss Count III of Snow's first amended complaint for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6). I grant their motions for the reasons that follow.

In Count III of his complaint, Snow alleges that Dr. Obaisi and Wexford[1] are liable for negligence under Illinois law for allegedly denying him necessary medical treatment. Defendants Wexford and Obaisi contend that this claim sounds in medical malpractice and must be dismissed for failing to comply with the Healing Arts Malpractice Act, 735 ILCS § 5/2-622, an Illinois law requiring a physician's certificate of merit to be filed with malpractice complaints. Snow, on the other hand, insists that Count III is nothing more than an ordinary common-law negligence claim not subject to the certificate requirement.

The Healing Arts Malpractice Act requires plaintiffs in any action seeking damages for injuries or death "by reason of medical, hospital, or other healing art malpractice" to file with their complaint a health care professional's written report, known as a certificate of merit, attesting that there is a "reasonable and meritorious cause for the filing of the action." 735 ILCS § 5/2-622(a). The purpose of the certificate requirement is to "deter the filing of frivolous suits against health care providers." *Cohen v. Smith*, 648 N.E.2d 329, 332

---

[1] Snow seeks to hold Wexford liable for Dr. Obaisi's actions pursuant to the doctrine of *respondeat superior* because Dr. Obaisi was allegedly acting within the scope of his employment with Wexford. First Am. Compl. ¶¶ 72-73.

2

(Ill. App. Ct. 5th Dist. 1995); *see also Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (the certificate requirement aims "[t]o minimize frivolous malpractice suits"). Failure to file a required certificate of merit is grounds for dismissing a malpractice claim. 735 ILCS § 5/2-622(g). Because this rule is substantive, it applies in federal court. *See Hahn v. Walsh*, 762 F.3d 617, 628-33, n.29 (7th Cir. 2014); *Sherrod*, 223 F.3d at 613.

A complaint does not have to allege medical malpractice on its face to trigger section 2-622's certificate requirement. *See Thomas ex rel. Smith v. Cook Cty. Sheriff*, 401 F. Supp. 2d 867, 877 (N.D. Ill. 2005); *Johnson v. Frain*, No. 17 C 2000, 2018 WL 2087448, at *5 (N.D. Ill. May 4, 2018). Because Illinois courts construe "healing art malpractice" broadly, even a complaint cast as an action for ordinary negligence must include a certificate if the applicable standard of care involves "distinctively medical knowledge or principles, however basic." *Woodard v. Krans*, 600 N.E.2d 477, 486-88 (Ill. App. Ct. 2d Dist. 1992). The type of case in which a certificate is not required "against a defendant health care provider is the exceptional one." *Id.* at 488. To determine whether a claim is for malpractice or ordinary negligence, Illinois courts consider "(1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is

inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiff['s] case." *Audia v. Briar Place, Ltd.*, No. 17-cv-6618, 2018 WL 1920082, *4 (N.D. Ill. Apr. 24, 2018) (quoting *Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill.App.3d 906, 909 (2005)).

Snow bases his negligence claim on duties that Dr. Obaisi owed as a healthcare professional and "as the primary person responsible for making medical decisions at Stateville." First Am. Compl. ¶ 69. Plaintiff alleges that, "in providing medical care ... or holding himself out as a professional rendering medical care," Dr. Obaisi owed Snow certain duties, including the duty "to possess and apply the skill and care of [a] reasonably well-qualified medical professional[]" and the duty "to ensure [that] Mr. Snow received appropriate medical diagnosis and treatment." *Id.* ¶¶ 68-69. According to Snow, Dr. Obaisi breached these duties "by ignoring Mr. Snow's requests for medical attention," by prescribing him the wrong medications, by "needlessly compartmentaliz[ing]" his treatment, and "by failing to provide [Snow] with necessary medical treatment prescribed to him by medical experts." *Id.* ¶¶ 13, 26, 39, 70. An ordinary juror would not be able to evaluate whether Dr. Obaisi applied the skill and care of a reasonable medical professional, or whether Dr. Obaisi delivered appropriate

4

medical diagnoses and treatment, without the assistance of expert testimony. *See Johnson*, 2018 WL 2087448, at *5; *Audia*, 2018 WL 1920082, at *4. And, even if expert testimony were not required to establish the applicable standard of care, the determinations at the center of Snow's negligence claim inherently concern Dr. Obaisi's medical judgment. *See Palmer v. Franz*, No. 13-cv-1698, 2017 WL 4122741, at *10 (N.D. Ill. Sept. 18, 2017). To assess Snow's medical requests and fashion appropriate treatment plans, Dr. Obaisi presumably had to exercise his professional knowledge, skills, and training. I therefore agree with Wexford and Obaisi that Count III sounds in malpractice.

Snow attempts to evade the certificate requirement by framing his negligence claim as one based solely on Dr. Obaisi's role in supervising Stateville's staff and directing the delivery of Stateville's medical resources, rather than his role in making medical judgments. Snow's argument is unpersuasive for at least two reasons. First, negligent supervision and negligent resource allocation are not what Count III alleges. Despite Snow's efforts to recast his allegations, Count III, as written, focuses on Dr. Obaisi's role in "rendering medical care" and "making medical decisions." First Am. Compl. ¶¶ 68-69. Second, although Snow is correct that "not every act or omission committed by a physician constitutes healing art malpractice,"

5

*Milos v. Hall*, 757 N.E.2d 654, 657 (Ill. App. Ct. 5th Dist. 2001), he provides no authority for his contention that Dr. Obaisi's decisions as Stateville's medical director did not implicate his medical knowledge, expertise, or judgment. *Cf. Sherrod*, 223 F.3d at 608-09, 613 (applying section 2-622 to malpractice claims against a prison medical director and others); *Dawson v. United States*, No. 3:16-cv-00827DRHSCW, 2017 WL 977822, at *2 (S.D. Ill. Mar. 14, 2017) (applying section 2-622 to institutional negligence claim).

The cases that Snow does cite offer scant support for his position. In *Thomas*, a plaintiff's wrongful death claim against two paramedics did not sound in medical malpractice because, according to the complaint, "anyone," not just a medical professional, could have seen that the prisoner was in serious need of urgent medical attention. 401 F. Supp. 2d at 877. Similarly, in *Awalt v. Marketti*, No. 11-cv-6142, 2012 WL 1161500 (N.D. Ill. Apr. 9, 2012), a court in this district determined that negligence claims against prison staff members (including medical and non-medical staff members) who disregarded clear warnings that a prisoner needed certain medications to control his epileptic seizures did not arise out of an unreasonable application of medical expertise.[2] *Id.* at *4. Snow's claim in

---

[2] The only other case that Snow cites in his brief is *Milos*, 757 N.E.2d at 657. In that case, a certificate of merit was not

6

Count III is different. He does not allege that Dr. Obaisi breached a duty of care that *anyone*, regardless of medical expertise, owes to another. Rather, he claims that Dr. Obaisi breached the duty of care that he owed as a medical "professional rendering medical care" to a patient. First Am. Compl. ¶ 68.

Because Count III as alleged is essentially a medical malpractice claim, it must be dismissed for failing to comply with the requirements of the Healing Arts Malpractice Act. Whether this dismissal is with prejudice is a matter of discretion. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Sherrod*, 223 F.3d at 614 (quoting *Cammon v. W. Suburban Hosp. Med. Ctr.*, 704 N.E.2d 731, 739 (Ill. App. Ct. 1st Dist. 1998)). I will permit Snow that opportunity here.

Defendants' motions to dismiss Count III are granted. Count III is dismissed without prejudice.

---

required to support a misrepresentation claim against a doctor who authored an autopsy report because, in conducting the autopsy, the doctor was not, by definition, performing a "healing art." *Id*. The facts in *Milos* bear little resemblance to Snow's allegations.

7

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 25, 2018