IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES C. SNOW (N-50072), | Case No. 1:17-cv-04015 |
| Plaintiff, | |
| v. | Honorable John Robert Blakey |
| GHALIAH OBAISI, APPOINTED EXECUTOR OF THE ESTATE OF SALEH OBAISI, CHARLES OKEZI, CATALINO BAUTISTA, WEXFORD HEALTH SOURCES, INC., RANDY PFISTER, and WALTER NICHOLSON | **JURY TRIAL DEMANDED** |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiff James C. Snow is an inmate at Stateville Correctional Center in Joliet, Illinois ("Stateville") who has been suffering from painful and worsening medical conditions for the past several years. Though healthcare providers and the Warden at Stateville know of Mr. Snow's conditions and his need for treatment, they have systematically minimized, downplayed, or ignored the risk of failing to provide Mr. Snow with medical care. By failing to provide Mr. Snow with the medical care he urgently needs, the Stateville medical and administrative staff have been and remain deliberately indifferent to Mr. Snow's plight. Defendants' response to the following three medical conditions—although referred to individually—collectively demonstrates a pattern or practice on the part of the Defendants that violates Mr. Snow's constitutional rights.

First, since at least March 2016, Mr. Snow has been suffering from chronic and gravitating pain, which has spread from his lower abdomen to his groin, lower back, and tailbone area, and which has caused painful and persistent gastrointestinal issues. Second, Mr. Snow is afflict-

ed with numerous painful nodules on his arms, legs, and torso, which have been worsening since at least 2012 and keep him awake at night. Finally, Mr. Snow has experienced pain while urinating since at least 2010.

During this time, Mr. Snow has frequently complained to Defendants about his ailments, but Defendants have ignored Mr. Snow's pleas for help and have done little to nothing to diagnose and treat Mr. Snow's conditions. Meanwhile, his condition has only worsened. As of now, Mr. Snow has not had adequate diagnostic exams to determine the cause of—much less provide adequate care for—the gravitating pain and gastrointestinal issues, the painful nodules, and the urinary issues. By sitting by idly for years and ignoring Mr. Snow's frequent complaints and denying him adequate medical care, Defendants have violated Mr. Snow's rights under the Eighth Amendment. This suit seeks an injunction requiring Defendants to provide constitutionally adequate medical care and monetary damages.

## JURISDICTION AND VENUE

1. Under 42 U.S.C. § 1983, Mr. Snow brings this action to redress the deprivation of his constitutional rights by defendants acting under the color of law. This Court has original jurisdiction to address the violations of Mr. Snow's constitutional rights under federal law pursuant to 28 U.S.C. §§ 1331 and 1343(a).

2. Under 28 U.S.C. § 1391(b), venue is proper in the Northern District of Illinois because the individual defendants, upon information and belief, reside here. Additionally, all events giving rise to these claims occurred in the Northern District of Illinois.

## PARTIES

3. At all relevant times, Plaintiff James C. Snow was a citizen of the State of Illinois incarcerated at Stateville, an Illinois Department of Corrections ("IDOC") facility located at 16830 S. Broadway St., Joliet, IL 60434.

4. Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation transacting business in Illinois and headquartered in Pennsylvania. Under a contract with the State of Illinois, Wexford is a healthcare provider for IDOC prisons throughout Illinois. At all relevant times, Wexford was responsible for the implementation, oversight, and supervision of medical policies and practices at Stateville. As an agent of IDOC, Wexford was acting under color of law through its lawful agents, including the Defendants Dr. Obaisi, Dr. Okezi, and Dr. Bautista, and other yet unknown healthcare employees at Stateville.

5. Defendant Dr. Saleh Obaisi was the Medical Director at Stateville, and an employee of, and final policymaker for, Wexford. In his role as Medical Director, Dr. Obaisi was responsible for implementing, overseeing, and supervising all medical care that Wexford provided at Stateville and for ensuring inmates received adequate medical care. Dr. Obaisi is a defendant in his individual capacity. At all times relevant here, until his death, Dr. Obaisi was acting under color of law and within the scope of his employment. Dr. Obaisi died in December 2017 while this suit was pending. On April 5, 2018, the Court substituted Ghaliah Obaisi, the Independent Executor of Dr. Obaisi's estate, in place of Dr. Obaisi as a defendant in this lawsuit.

6. Defendant Dr. Charles Okezi is a physician licensed to practice medicine in Illinois and is the Acting Medical Director at Stateville, and an employee of, and final policymaker for, Wexford. In his role as Medical Director, Dr. Okezi is responsible for implementing, overseeing, and supervising all medical care that Wexford provides at Stateville and for ensuring in-

mates received adequate medical care. At certain relevant times, Dr. Okezi was acting under color of law and within the scope of his employment. Dr. Okezi is a defendant in his individual capacity.

7. Defendant Dr. Catalino Bautista is a physician at Stateville, and an employee of, and final policymaker for, Wexford. In his role as physician, Dr. Bautista is responsible for implementing medical care that Wexford provides at Stateville and for ensuring inmates received adequate medical care. At certain relevant times, Dr. Bautista was acting under color of law and within the scope of his employment. Dr. Bautista is a defendant in his individual capacity.

8. Defendant Randy Pfister was the Warden at Stateville and an employee of IDOC. In that capacity, Warden Pfister oversaw all day-to-day operations at Stateville, including the processes by which inmates received all of their medical care. Warden Pfister is a defendant in his individual and official capacity. At certain relevant times, Warden Pfister was acting under color of law and within the scope of his employment.

9. Defendant Walter Nicholson is the Acting Warden at Stateville and an employee of IDOC. Acting Warden Nicholson replaced Warden Pfister as the chief administrative officer at Stateville on January 31, 2018. In that capacity, Acting Warden Nicholson oversees all day-to-day operations at Stateville, including the processes by which inmates receive all of their medical care. Acting Warden Nicholson is a defendant in his individual and official capacity. At certain relevant times, Acting Warden Nicholson was acting under color of law and within the scope of his employment.

## BACKGROUND

### I. Defendants Disregard Mr. Snow's Complaints of Severe, Gravitating Abdominal Pain

10. Mr. Snow has been experiencing ongoing and worsening abdominal pain since the beginning of 2016. The abdominal pain started on Mr. Snow's lower left side and has, over time, gravitated to his lower right side and then to his groin, back, tail bone, and upper left side. The pain is so severe that it has continuously kept Mr. Snow up at night. During the same time, Mr. Snow has experienced irregular bowel movements, stomach cramps, and bloody stools. Mr. Snow has battled frequent diarrhea for more than a year. Mr. Snow's stomach has been swollen, protruding, and bloated. These gastrointestinal issues are so disruptive to Mr. Snow's daily life that he often does not eat on days that he has visitors or meetings with counsel in order to avoid having diarrhea.

11. Because of a history of cancer in Mr. Snow's family, he became concerned early on that the problem is serious. Since then, he has consistently and persistently requested medical attention from Dr. Obaisi, Dr. Okezi, and Dr. Bautista (the "Wexford Doctors"), as well as Warden Pfister and Acting Warden Nicholson (the "Stateville Wardens") and other Wexford staff, to diagnose the cause of and reduce or eliminate the pain.

12. Specifically, Mr. Snow has discussed his gravitating abdominal pain with the Wexford Doctors and their direct subordinates at Stateville's Health Care Unit in appointments on April 20, 2016, June 16, 2016, August 1, 2016, August 18, 2017, and May 21, 2018.

13. At those appointments, Mr. Snow told the Wexford Doctors, and other medical staff that he is experiencing pain in his lower abdomen and that the pain is gravitating and worsening. Mr. Snow also told them about his frequent diarrhea and bloody stools.

14. Mr. Snow also sent Dr. Obaisi a letter dated March 15, 2016 complaining of pain.

15. When Mr. Snow complained of his abdominal pain directly to Dr. Obaisi, Dr. Obaisi insinuated that Mr. Snow's ailments are psychological, not physical, and prescribed a round of psychotropic drugs to Mr. Snow.

16. The Stateville Wardens are also aware of Mr. Snow's severe and gravitating abdominal pain because Mr. Snow filed emergency grievances detailing his abdominal pain on June 18, 2016, August 24, 2016, September 30, 2016, November 1, 2016, August 18, 2017, and October 24, 2017.

17. On information and belief, the Stateville Wardens reviewed Mr. Snow's emergency grievances in accordance with the usual practice at Stateville of referring emergency grievances to the Wardens. The Stateville Wardens denied Mr. Snow's grievances.

18. In addition, Mr. Snow sent Warden Pfister a letter on October 11, 2016 noting that his abdominal pain has worsened and pleading for help. Warden Pfister did not reply to Mr. Snow's letter.

19. Thus, the Stateville Wardens, the Wexford Doctors, and other Wexford personnel refused to properly treat Mr. Snow's gravitating pain, or ensure that he received access to proper medical care, including diagnostic exams to determine the source of the pain.

20. The Stateville Wardens', Wexford's, and the Wexford Doctors' inattention and indifference to Mr. Snow's deteriorating physical condition have caused Mr. Snow to suffer needlessly.

**II.     Defendants Disregard Mr. Snow's Complaints of Painful Nodules**

21. Mr. Snow has had large, painful nodules (or lumps) on his arms since about 2011. Mr. Snow's nodules present as prominently raised bumps under his skin.

6

22. Since 2011, the lumps have spread all over his body, including more on his arms, legs, and torso. The lumps are clearly visible, painful to the touch, cause Mr. Snow pain when he bends his arms or legs, and move freely under his skin. The nodules are painful enough to keep Mr. Snow awake at night.

23. In June 2012, nearly four months after Mr. Snow first complained of the painful nodules, Mr. Snow went to UIC Medical Center to undergo a diagnostic exam and for a possible biopsy of the nodules.

24. The UIC specialist examined only the nodules on Mr. Snow's arms; the specialist did not examine the painful nodules on Mr. Snow's legs and torso.

25. After examination, Mr. Snow's nodules were diagnosed as lipomas, benign slow-growing masses, which although not immediately dangerous, nevertheless cause Mr. Snow a great deal of pain and discomfort.

26. The Wexford Doctors and Stateville Wardens have responded with indifference to Mr. Snow's complaints of pain arising from the nodules.

27. Specifically, Mr. Snow has complained to the Wexford Doctors and their staff on numerous occasions that the nodules cause him pain, including as recently as on July 17, 2018. During at least one appointment, when Mr. Snow complained about the pain from his nodules, Dr. Bautista told him that he would not address the pain because the appointment had been made in connection with one of Mr. Snow's other medical conditions.

28. Instead of referring Mr. Snow to have the masses surgically removed—which would make the pain and discomfort disappear altogether—medical personnel at Stateville under the Wexford Doctors' supervision have merely given Mr. Snow Ibuprofen, which has neither alleviated the pain nor caused the nodules to decrease in size or number.

7

29. Likewise, the Stateville Wardens have personal knowledge of the painful nodules on Mr. Snow's body because Mr. Snow submitted grievances to the Stateville Wardens on November 25, 2016 and December 26, 2016 specifically referencing the painful nodules. Mr. Snow submitted these grievances shortly after he received a complete copy of his medical file.

30. Around the same time, Mr. Snow spoke to Warden Pfister in person about—and showed Warden Pfister—the painful nodules. Although Warden Pfister acknowledged Mr. Snow's concerns and stated that he would follow up with Mr. Snow on this issue, Mr. Snow has yet to receive a response from Warden Pfister or his successor, Acting Warden Nicholson.

31. The Wexford Doctors and Stateville Wardens have otherwise ignored Mr. Snow's requests for help and his reports that the Ibuprofen is ineffective to address his persistent pain.

### III. Defendants Disregard Mr. Snow's Complaints of Urological Problems

32. Around 2010, Mr. Snow began experiencing trouble urinating. Mr. Snow describes the problem as simultaneously "needing to go and not being able to."

33. Mr. Snow visited the urology clinic at UIC Medical Center some time after he began experiencing these symptoms.

34. At that time, Mr. Snow received both Urinalysis (UA) and urine culture (UCx) tests. UIC specialists recommended that Mr. Snow undergo additional testing for his urologic issues in two to three months' time.

35. The specialists' orders were clearly outlined in the March 24, 2010 discharge notes from UIC Medical Center.

36. In addition, Mr. Snow submitted grievances to the Stateville Wardens on November 25, 2016, December 26, 2016, and August 18, 2017 specifically referencing his urologic is-

sues and the recommendations of the UIC specialists. Mr. Snow submitted these grievances shortly after he received a complete copy of his medical file.

37. Around the same time, Mr. Snow spoke to Warden Pfister in person about his urologic problems. Although Warden Pfister acknowledged Mr. Snow's concerns and stated that he would follow up with Mr. Snow on this issue, Mr. Snow has yet to receive a response from Warden Pfister or Acting Warden Nicholson.

38. Despite knowing of the specialists' order for follow-up testing, the Wexford Doctors and the Stateville Wardens failed to implement the recommended course of action. Although there have been periods of time when Mr. Snow has taken medication for the urological issues, even on the maximum dose prescribed he has awoken five to seven times per night experiencing urological issues. Mr. Snow has complained about these continuing issues, but the Wexford Doctors and Stateville Wardens have not provided him with the follow-up testing recommended by the specialists.

39. To date, Mr. Snow has not received adequate care for his severe gravitating abdominal pain, the painful nodules that spot his body, and his urological issues. This is directly attributable to Defendants' deliberate indifference to Mr. Snow's objectively serious medical needs. The Defendants' actions have forced Mr. Snow to suffer unnecessary agonizing pain and impairment with essential activities like sleeping.

## COUNT I
### Deliberate Indifference to Medical Needs (Eighth Amendment)
**(Against Defendants Obaisi, Okezi, Bautista, Pfister, and Nicholson)**

40. Plaintiff incorporates paragraphs 1-39 of this Complaint as if fully restated here.

41. As described more fully above, Dr. Obaisi, the Medical Director at Stateville; Dr. Okezi, the Acting Medical Director at Stateville; Dr. Bautista, a physician at Stateville; Warden

Pfister, the chief administrative officer at Stateville, and Acting Warden Nicholson, the acting chief administrative officer at Stateville, had notice of Mr. Snow's medical needs and the seriousness of his medical conditions, and knew the risk of harm to Mr. Snow if he did not receive appropriate medical care. Likewise, the Wexford Doctors and Stateville Wardens knew of the recommendations for follow-up from outside experts on Mr. Snow's health issues.

42. Despite that knowledge, the Wexford Doctors and Stateville Wardens failed to ensure Mr. Snow received proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment.

43. As a result of the Wexford Doctors' and Stateville Wardens' unjustified and unconstitutional conduct, Mr. Snow experienced pain, suffering, emotional distress, and injury. The Wexford Doctors and Stateville Wardens were deliberately indifferent to Mr. Snow's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Snow's rights.

44. Defendants Dr. Obaisi's, Dr. Okezi's, Dr. Bautista's, Warden Pfister's, and Acting Warden Nicholson's conduct was the proximate cause of Mr. Snow's injuries.

45. At all relevant times, Defendants Dr. Obaisi, Dr. Okezi, Dr. Bautista, Warden Pfister, and Acting Warden Nicholson were acting under color of law.

### COUNT II
**Deliberate Indifference to Medical Needs (Eighth Amendment)**
**(Against Defendant Wexford)**

46. Plaintiff incorporates paragraphs 1-39 of this Complaint as if fully restated here.

47. At all times relevant here, Defendant Wexford contracted with the IDOC to provide healthcare to men housed at Stateville, including Mr. Snow. As the provider of healthcare

10

services to prisoners incarcerated at Stateville and other IDOC facilities, Wexford was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to prisoners in IDOC custody.

48. Prior to the events giving rise to Mr. Snow's Complaint, Defendant Wexford had notice of widespread policies and practices by healthcare employees at Stateville under which prisoners with serious medical needs, like Mr. Snow, were routinely denied medical care.

49. Specifically, it is common at Stateville to encounter prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees. *See* Appendix A to Final Report of the Court Appointed Expert at 1–40, *Lippert v. Godinez*, No. 10 C 4603 (N.D. Ill.).

50. Despite knowledge of these problematic policies and practices, Defendant Wexford did nothing to ensure that prisoners at Stateville received adequate medical care and access to medical care, thereby acting with deliberate indifference.

51. Specifically, there exist widespread policies or practices at Stateville pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which:

(1) healthcare personnel commonly fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor;

(2) healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition;

(3) healthcare personnel commonly fail to perform adequate examinations of prisoners with a serious medical condition;

11

(4) healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner;

(5) healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner complaints and requests for medical care;

(6) healthcare personnel fail to provide timely healthcare to prisoners;

(7) healthcare personnel fail to respond adequately or timely to diagnostic testing which reveals a serious medical need;

(8) healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; and

(9) healthcare personnel fail or refuse to provide care or follow recommendations made by outside specialists.

52. These policies and practices—so widespread and well-settled as to constitute de facto policy at Stateville—were perpetuated at Stateville because Defendant Wexford was deliberately indifferent to the problem. Through its indifference, Defendant Wexford has effectively ratified the policies.

53. Defendant Wexford, and its employees or contractors acting pursuant to the foregoing policies and practices in engaging in the misconduct described above, proximately caused Mr. Snow's injuries. To this day, Defendant Wexford refuses to provide Mr. Snow access to adequate medical care and has failed to follow up on the recommendations from medical experts who evaluated Mr. Snow, even though Mr. Snow has a clear medical need. Accordingly, Mr. Snow seeks injunctive relief and damages to stop this continuing constitutional violation.

## **CONCLUSION**

For these reasons, Mr. Snow respectfully requests that this Court enter a judgment against Defendants and award Mr. Snow:

1. An injunction requiring Defendants to take Mr. Snow to outside specialists for diagnosis and treatment of all of his medical ailments and to follow all orders and recommendations regarding continuing care given by those specialists;

2. Compensatory and punitive damages in an amount to be determined;

3. Attorneys' fees, expenses, and costs; and

4. Such other relief this Court deems just and proper.

Dated: March 13, 2019                                            Respectfully submitted,

      */s/ Frederic J. Artwick*
Frederic J. Artwick
One South Dearborn Street
Chicago, Illinois 60603
Telephone: + 1 312 853-7529

Bojan Manojlovic
Rebecca B. Shafer
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

*Counsel for Plaintiff James C. Snow*