IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES C. SNOW (N-50072), ) | |
| ) | Case No. 1:17-cv-04015 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| GHALIAH OBAISI, INDEPENDENT EXECUTOR ) | Honorable John Robert Blakey |
| OF THE ESTATE OF SALEH OBAISI, CHARLES ) | |
| OKEZI, CATALINO BAUTISTA, WEXFORD ) | |
| HEALTH SOURCES, INC., RANDY PFISTER, and ) | |
| WALTER NICHOLSON, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

NOW COMES the Defendant, Wexford Health Sources, Inc., by and through counsel, Connolly Krause, LLC, and for its Local Rule 56.1 Statement Undisputed Material Facts in support of his Motion for Summary Judgment as to Plaintiff's Second Amended Complaint (Dkt. 114), states as follows:

**List of Exhibits**

- Exhibit 1: Plaintiff's Second Amended Complaint (Dkt. 114)
- Exhibit 2: Plaintiff's Interrogatory Responses
- Exhibit 3: Deposition Transcript James Snow
- Exhibit 4: Deposition Transcript Defendants' 26(a)(2)(B) witness Michael Uzer, M.D.
- Exhibit 5: Rule 26(a)(2)(B) Report of Michael Uzer, M.D.
- Exhibit 6: Declaration of Marlene Henze, M.D.
- Exhibit 7: Deposition Transcript Neil Fisher, M.D. Wexford Health Sources, Inc.'s 30(b)(6) Corporate Representative Deposition

**Description of the Parties**

1. Plaintiff, James C. Snow, (hereinafter referred to as "Plaintiff" or "Mr. Snow"), is an inmate incarcerated in the Illinois Department of Corrections ("hereinafter "IDOC") at

Stateville Correctional Center during all times material to Plaintiff's Second Amended Complaint. (Exhibit 1, ¶3).

2. Defendant, Wexford Health Sources Inc., (hereinafter referred to as "Wexford"), is a corporation that contracted with the State of Illinois to provide medical services to inmates residing at Stateville Correctional Center for all times material to Plaintiff's Second Amended Complaint. (Exhibit 1, ¶4)

3. Defendant, Dr. Saleh Obaisi (hereinafter referred to as "Dr. Obaisi"), prior to his death and the substitution of his estate as a party to this suit, was a licensed physician sued in his individual capacity, who during pendency of the case died in December 2017. On April 5, 2018, the Court substituted Ghaliah Obaisi, Independent Executor of Estate of Dr. Obaisi, in place of Dr. Obaisi as a defendant. (Exhibit 1, ¶6)

4. Defendant, Christian Okezie, M.D., (hereinafter "Dr. Okezie") was acting Medical Director at Stateville for a period of time is a physician licensed to practice medicine in Illinois and is sued by Plaintiff in his individual capacity. (Exhibit 1, ¶6).

5. Defendant, Catalino Bautista, M.D., (hereinafter "Dr. Bautista") was at Stateville for a period of time is a physician licensed to practice medicine in Illinois and is sued by Plaintiff in his individual capacity. (Exhibit 1, ¶7).

**Venue and Jurisdiction**

6. Jurisdiction and venue are proper because Plaintiff filed a federal claim under 42 U.S.C. §1983 for alleged injuries that are alleged to have occurred within the Northern District of Illinois while Plaintiff was an inmate at Stateville. (Exhibit 1 at ¶1-2).

**Undisputed Material Facts**

*Claims against Wexford*

7. Plaintiff's interrogatory responses indicate the claims against Wexford, including specific actions or inactions, are only those reflected in his pleadings. (Ex. 2, p. 3, ¶ 2).

8. At Plaintiff's deposition, he testified that he is suing Wexford because "they are the health care people for the Illinois Department of Corrections, aren't they?" (Ex. 3,162:12-18).

9. When informed they are, Plaintiff testified that that he is suing Wexford because it is the employer of Dr. Obaisi, Dr. Bautista, and Dr. Okezie. (Ex. 3, 165-166:11-16).

10. Plaintiff testified that he is also suing Wexford because he wrote to unknown people at Wexford about his "issues" and they did not respond. Plaintiff does not know why the unknown "people" did not respond or whether the unknown "people" at Wexford ever took action in response to the letters he sent them. (Ex. 3, 167-168:23-21).

11. Plaintiff is not aware of any other reason he is suing Wexford. (Ex. 3, 168-169:22-1).

12. Defendant's expert Dr. Michael Uzer is a board-certified internal medicine and gastroenterology physician who opined that Wexford met the community standard of care in treating Plaintiff's abdominal issues. (Ex. 4, p.13-14, L.14-21; Ex. 5 section I-B).

13. There is no evidence Wexford Health Sources, Inc. policy, procedure, guideline or practice that affected the provision of medical care to Mr. Snow. (Ex. 4, 78-79:18-7).

14. Doctors Obaisi, Okezie, and Bautista were all medical doctors licensed by the State of Illinois to provide medical care and had adequate training, qualifications, and experience to provide medical care to Plaintiff. (Ex. 5, p. 31, ¶ 6).

15. Wexford employs medical physicians to provide patient care at IDOC prisons to inmates such as James Snow. These physicians are licensed physicians who hold licensure through the

3

Illinois Department of Financial and Professional Regulation. Physicians treat patients based upon their education, training and experience. Each physician employed by Wexford has independent medical autonomy in the treatment of patients based upon their independent medical judgment taking into consideration each patient's unique clinical picture. (Ex. 6, ¶ 145).

16. Physician peer review is part of Wexford's normal process for clinician evaluation. (Ex. 7, p. 55, L. 6-14).

17. There is no instance where Dr. Obaisi, Dr. Okezie, Dr. Bautista or other healthcare personnel at Stateville prison failed to provide timely healthcare to Mr. Snow on-site at Stateville or off-site at UIC. (Ex. 5, p. 31, ¶ 7).

18. While Mr. Snow awaited his UIC appointments, the Stateville medical record charts that his providers had inquired repeatedly from the Stateville medical records department for status of off-site referral. (Ex. 5, p. 32, ¶ 1).

19. There no evidence that Wexford in any way had a policy, procedure, guideline or practice to delay or interfere in off-site care at UIC. Ultimately, it is for UIC and its specialists to provide specialty consult or testing dates when they are available to see patients. (Ex. 5, p. 32, ¶ 1).

20. There is no evidence that any policy, procedure, practice, guideline of Wexford caused, contributed to or exacerbated an injury or pain to Mr. Snow for his functional bowel disorder. (Ex. 4, 78-79:21-7).

21. Wexford hires clinicians who are trained in medicine who are expected to preform clinical skills related to their education and training per their licensure, not override by guidelines. (Ex. 7, 32-33:19-3).

22. Wexford allowed its physicians to use their autonomy and exercise their independent medical judgment in determining when to make off-site referrals to specialists and when to

4

implement consultant recommendations. (Ex. 5, p. 32, ¶ 1). The recommendations by UIC consultants were followed consistent with Dr. Obaisi, Dr. Okezie and Dr. Bautista's independent medical judgment. (Ex. 5, p. 32, ¶ 1).

23. Dr. Fisher testified that Wexford has worked with UIC to reduce wait times. (Ex. 7, p. 105). There have been times where the wait is too long at UIC and Wexford will refer to a local specialist. (Ex. 7, p. 105). Appointments at UIC depend upon the availability of appointments of UIC and is tracked by an internal Wexford process. (Ex. 7, p.108).

24. Sick call is an IDOC process by which inmates sign up for evaluation and are seen and triaged for potential physician review depending on the severity of the condition. (Ex. 7, p. 79, L. 3-22). It typically takes 24 hours after a request for an inmate to be seen by medical staff. (Ex. 7, p. 76, L. 2-5). If it is an emergency, they will be seen urgently. (Ex. 7, p. 77-78, L. 6-23). There is always a clinician on call. (Ex. 7, p. 140).

25. The Collegial review process is clinicians getting together to discuss the case and come up with either a plan of care that may require approval or an alternative treatment plan. (Ex. 7, p. 82-83, L. 22-5).

26. Although Wexford has written guidelines regarding off-site care, clinicians follow their own clinical judgement, training, and expertise to make decisions. (Ex. 7, p. 83, L. 6-20).

27. The medical record of each patient is available for all clinicians and members of the health care team; so all members of the health care team are documenting in the inmate's medical record. (Ex. 7, p. 83, p. 119).

28. Medical guidelines developed and maintained by medical advisory committee of Wexford Health; MAC is composed of health care clinicians and administrative professionals who work to

5

guide medical and behavioral health practices resulting in best outcomes for individuals and agencies served by Wexford. (Ex. 7, p. 83, L. 179-180).

29. The purpose of developing the guidelines is to assist clinicians in reaching the best possible outcomes for each patient while reducing error and inefficiency; clinical pathways do not replace sound clinical judgment, nor do they strictly apply to all patients. (Ex. 7, p. 180).

30. Each patient is different and clinical judgment depends on each different patient; guidelines are meant to guide the clinician but not replace their clinical judgment – so, sometimes, clinician won't even look at the guidelines when treating a patient. (Ex. 7, p. 180). Wexford medical guidelines may be helpful, but do not replace sound clinical judgment. (Ex. 7, p. 189).

31. Plaintiff has been given extensive medication for treatment of his carious ailments including non-formulary drugs without regard for cost. He was never denied medication. (Ex. 6, ¶ 131).

32. Wexford has approved an assortment of referrals for Plaintiff who was continuously sent out for specialty referral. (Ex. 6, ¶¶ 19, 96, 103, 111, 121, 123, 124, 131). Conversely, Wexford collegial review clinicians determine an alternative treatment plan only one time. (Ex. 6, ¶ 32).

33. Plaintiff's medical issues complained of in this case are all controlled and do not require referral. (Ex. 6, ¶¶ 87, 134; Ex. 5, pp. 32 ¶ 4).

34. Physicians do not treat patients utilizing a cookbook one size fits all approach. Every human being has their own unique individual biology and medical history that must be considered in treatment plans. Though Wexford has treatment guidelines, the Wexford treatment guidelines outline only common, general type of care that could be provided to general groups of patients. Each individual case may differ. Wexford's treatment guidelines are only a reference tool for medical providers, and they do not mandate care or a course of treatment to any patient. Medical

policies, procedures, and guidelines are reference tools and do not set the standard of care. (Ex. 6, ¶ 146).

35. Therefore, all Wexford physicians and medical personnel are required to use their own independent, professional medical judgment when providing medical care. Wexford's guidance is that all medical treatment should be consistent with prevailing community medical standards. (Ex. 6, ¶ 147).

36. Wexford does not, and has never had, any policies or procedures that incentivize its healthcare employees to delay or deny medical care, regardless of medical necessity. Instead, Wexford, its physicians, and medical staff, consider each patient on a case-by-case basis to determine the most appropriate plan of treatment to best address each individual patient's respective medical needs. (Ex. 6, ¶ 153).

37. Plaintiff's expert, Dr. Anderson, had no criticism of Wexford Health Sources' policies and procedures. (Ex. 4, p. 108, L. 3-7).

                                                             Respectfully Submitted,

                                                             WEXFORD HEATLH SOURCES, INC.

                                                             By: /s/ Robert S. Tengesdal
                                                             Attorney for Defendant

Robert S. Tengesdal (#6288650)
CONNOLLY KRAUSE LLC
500 West Madison Street, Suite #2430
Chicago, IL 60661
Ph: (312) 253-6200